IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


CHARLES WHITNEY,                    :
                                    :
            Plaintiff               :
                                    :
      v.                            :   CIVIL NO. 3:CV-14-357
                                    :
JOHN E. WETZEL, ET AL.,             :   (Judge Conaboy)
                                    :
            Defendants              :

_____

**MEMORANDUM**
**Background**

        Charles Whitney, an inmate presently confined at the Benner

State Correctional Institution, Bellefonte, Pennsylvania (SCI-

Benner), initiated this pro se civil rights action pursuant to 42

U.S.C. § 1983.  Service of the Complaint was previously ordered.

        Thirty-one (31) Defendants are identified by name in the

Complaint including Secretary John Wetzel, Assistant Counsel Ronald

Chadwell, and Deputy Secretary Murray of the Pennsylvania

Department of Corrections (DOC).[1]  The Plaintiff is also proceeding

against the following employees of the Rockview State Correctional

Institution, Bellefonte, Pennsylvania (SCI-Rockview):

Superintendent M. Lamas; Majors (3) Ted Robinson, Snedeker, and

McMahon; Horton; Miller; Captains (2) Eton, Dyke; J. Rackovan;

Sergeants (3) T. Rogers, Powell, and Knight; Deputy Boyles;

_____

1.  A total number of forty (40) Defendants are listed in the
Complaint.  However, that figure includes six (6) John/Jane Doe
Defendants, one Defendant, Sullivan, being listed twice, and two
missing numbers (5 & 6) in the list.

1

Lieutenants (3) Hoover, Bailey and Hardy;  Mr. Dougherty; Hearing Examiner D. A. Kuhn; Unit Manager Fed. Fiebsome; and Correctional Officers (9) Poiters, Osborne, Nemihood, Cepreshu, Sutton, Taylor, Anneski; Jedrzejik; and Sullivan.[2]

The Complaint is set forth in a lengthy, rambling and at times repetitive fashion.  Plaintiff states that after being transferred to SCI-Rockview he was initially placed in the prison's Restricted Housing Unit (RHU).  On June 4, 2012, Plaintiff was released from the RHU and placed in general population.  On June 22, 2012, M. Anthony became the Plaintiff's correctional counselor per a directive from Major Robinson.

Thereafter, Plaintiff was allegedly subjected to a "conspiracy of retaliation" for previously filing a lawsuit against Major Ted Robinson and for initiating institutional grievances at SCI-Rockview.[3]  Doc. 1, p. 5.  The alleged retaliation included use of excessive force, discrimination, defamation, falsified misconduct charges, cell transfers, and destruction of personal property.[4]  Whitney also contends that his institutional job assignment was changed to being a kitchen worker so that he could be harassed, given false work performance reports, and issued

---

2.  The body of the complaint indicates that Correctional Counselor M. Anthony is also a Defendant.

3.  The lawsuit regarded actions which transpired at another state correctional facility.

4.  Whitney claims that his radio and footlocker were broken by Sergeant Rogers.

falsified misconduct charges by Defendants Anneski and Jedrzejik.
See id. at p. 9.

The Complaint next contends that Plaintiff was subjected to
multiple pat down searches at mealtime for filing a grievance
regarding his inability to exercise his religious beliefs.[5]  When
he attempted to initiate a grievance regarding that conduct,
Defendant Rogers purportedly refused to provide him with the needed
form.  Whitney further asserts that after receiving another
falsified misconduct charge he was sanctioned to a thirty (30) day
period of confinement in an RHU cell which was cold and he was
denied an extra blanket and his requests for the heat to be turned
on were ignored.  Plaintiff adds that a grievance he filed
regarding the conditions of his RHU cell was not processed by
Defendant Rackovan.  It is next alleged that Plaintiff was given a
retaliatory transfer to SCI-Benner which was approved by numerous
Defendants including Lamas and Murray.

Plaintiff further maintains that he was subjected to
unwarranted excessive force on June 4, 2013 and denied medical
attention for his resulting injuries.  See id. at pp. 19-20.  He
was also allegedly issued additional falsified misconduct charges.
Plaintiff's Complaint additionally raises pendent state law tort
claims.  The Complaint seeks compensatory and punitive damages.

Defendants have filed a motion to dismiss the Complaint.[6]

---

5.  Plaintiff states that he practices the religion of Yoruba
Santeria.  See id. at p. 10.

6.  The motion to dismiss does not specifically address all of
(continued...)

<u>See</u> Doc. 10.  A review of the docket shows that an opposing brief has not been submitted.

## **Discussion**

### **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  <u>See</u> Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  <u>Id</u>. at 556.

A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a

---

6.  (...continued)
Plaintiff's individual claims such as his allegation of being subjected to excessive force.

cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Grievance Procedure**

Defendants' initial argument for dismissal asserts that they cannot be held liable based upon their denial of Whitney's inmate grievances and appeals.  See Doc. 11, p. 3.  Accordingly, they conclude that dismissal should be entered in favor of Defendants Rackovan, Rogers, and Osborne.  See id. at p. 6.

Inmates also do not have a constitutional right to a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038,

5

2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against any of the Defendants solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

A review of the Complaint shows that Plaintiff is attempting in part to establish liability against some of the Defendants based upon their involvement in the handling of his administrative grievances and appeals.  Pursuant to the above discussion, such an approach is insufficient for the purpose of establishing liability under § 1983.

This Court agrees that since the claims against Defendant Rackovan are all premised on his handling of Plaintiff's grievances, he is entitled to entry of dismissal.  However, since the Complaint includes other allegations including claims that Rogers vandalized Plaintiff's personal property (Doc. 1, p. 14) and Osborne was responsible for Whitney being issued a false misconduct

6

(Id. at p. 15) outright entry of dismissal in favor of those two officials is not appropriate.

**Personal Involvement**

Among the named Defendants are supervisory officials including Secretary Wetzel and former Deputy Secretary Murray of the DOC as well as Superintendent Lamas, Deputy Superintendents Boyles, Horton and Miller of SCI-Rockview.  The second argument for dismissal contends that the Complaint fails to allege any facts showing that those individuals were personally involved in any constitutional misconduct, they are entitled to entry of dismissal. See Doc. 11, p. 6.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton

v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As
explained in Rode:

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . .
> .  [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of
> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

Rode, 845 F.2d at 1207.

Based upon a review of the Complaint, this Court agrees that
Plaintiff is attempting to establish liability against Secretary
Wetzel and former Deputy Secretary Murray premised upon either
their respective supervisory roles within the DOC or their handling
of Plaintiff's administrative grievances and appeals.  Accordingly,
this Court agrees that Defendants Wetzel and Murray are entitled to
entry of dismissal.

However, the Complaint includes claims that Defendant Horton
personally refused the inmate's request for an extra blanket
despite observing Plaintiff in an allegedly extremely cold cell.
See Doc. 1, p. 11, ¶ 27.  There are also contentions that
Superintendent Lamas knew that Plaintiff was being housed in a cold
cell and ignored the situation.  See id. at ¶ 134.

The claims against Boyle and Miller appeared to be premised
primarily upon their participation on the prison's Program Review
Committee (PRC) which visited Plaintiff while he was being housed
in the RHU.  It is asserted that during those visits the PRC
members personally observed Plaintiff being housed in an
excessively cold cell and failed to take any appropriate action in

8

response to the inmate's complaints.  Since those claims adequately allege personal involvement by Lamas, Boyles, and Miller in deliberate indifference to an apparent safety risk their request for dismissal will be denied.

**DOC**

In a footnote, the Defendants also argue asserts that because it is an agency of the Commonwealth of Pennsylvania, the DOC is not a properly named defendant.  See Doc. 11, p. 6, n. 1. Although not included in the list of Defendants, the caption of the Complaint arguably indicates that the DOC is being named as a Defendant.

The United States Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978).  The Court of Appeals for the Third Circuit has similarly concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court.  The Court noted that a § 1983 suit against a state official's office was "no different from a suit against the State itself." Id. at 71.  "Will establishes that the State and arms of the State, which have traditionally enjoyed

9

Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." <u>Howlett v. Rose</u>, 496 U.S. 356, 365 (1990).

Pursuant to the above discussion, this Court agrees that the DOC is clearly not a properly named defendant in a § 1983 action and therefore is entitled to entry of dismissal.

**<u>Verbal Harrassment</u>**

The Complaint includes multiple allegations of verbal harassment and threats by various Defendants.  The pending motion to dismiss argues that those allegations of verbal harassment and intimidation do not rise to constitutional violations.  <u>See</u> Doc. 11, p. 8.

The use of words generally cannot constitute an assault actionable under § 1983.  <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n. 7 (2d Cir.); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); <u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. <u>Balliet v. Whitmire</u>, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), <u>aff'd</u>, 800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based only on verbal threats will fail regardless of whether it is

asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal threats and remarks allegedly voiced against Whitney were accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas. More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior. Given the circumstances described by Plaintiff, the purported verbal remarks attributed to the Defendants were not of such magnitude to shock the conscience as

11

contemplated by this Court in  S.M. v. Lakeland School District,
148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001) and thus, by themselves
did not rise to the level of a constitutional violation.[7]

**Conditions of Confinement**

Defendants assert that although Plaintiff alleges that he
was confined in an ice cold RHU cell for thirty days, they assert
that said claim is constitutionally insufficient because the
Complaint acknowledges that Whitney had a blanket, jumpsuit and two
sheets to keep him warm.  See Doc. 11, p. 8.

The Eighth Amendment's prohibition of cruel and unusual
punishment imposes duties on prison officials to provide prisoners
with the basic necessities of life, such as food, clothing,
shelter, sanitation, medical care and personal safety.  See Farmer
v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S.
25, 31 (1993).  Prison conditions may amount to cruel and unusual
punishment if they cause "unquestioned and serious deprivations of
basic human needs . . . [that] deprive inmates of the minimal
civilized measure of life's necessities."  Tillman v. Lebanon Cnty.
Corr. Fac., 221 F.3d 410, 418 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have
stressed that the duration of the complainant's exposure to the
alleged unconstitutional conditions and the "totality of the
circumstances" are critical to a finding of cruel and inhumane
treatment.  Hinterlong v. Hill, 2006 WL 2303106 * 5-6  (E.D. Pa.

---

7.  The allegations of retaliatory verbal harassment are discussed
below.

August 8, 2006); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

Moreover, the focus must be on the deprivation of a particular

basic necessity.  As explained in Wilson v. Seiter:

> Some conditions of confinement may
> establish an Eighth Amendment violation
> "in combination" when each would not do so
> alone, but only when they have a mutually
> enforcing effect that produces the
> deprivation of a single, identifiable
> human need such as food, warmth, or
> exercise – for example, a low cell
> temperature at night combined with a
> failure to issue blankets. To say that
> some prison conditions may interact in
> this fashion is a far cry from saying that
> all prison conditions are a seamless web
> for Eighth Amendment purposes. Nothing so
> amorphous as "overall conditions" can rise
> to the level of cruel and usual punishment
> when no specific deprivation of a single
> human need exists.

501 U.S. 294, 304-05 (1991).

In addition to showing conditions that pose a risk of

serious harm, the inmate must show that the prison official

responsible for the conditions of confinement acted with "a

sufficiently culpable state of mind."  Id. at 298.  A prison

official violates the Eighth Amendment when he acts with deliberate

indifference to a known, objectively serious risk to a prisoner's

health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v.

Whetzel, 256 F.3d 120, 125 (3d Cir.  2001).  This requirement of

actual knowledge means that "the official must both be aware of

facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference."

Farmer, 511 U.S. at 837.

13

Given the totality and duration of Plaintiff's factual assertions regarding his claims of being intentionally exposed to excessive cold temperature for a continuous thirty (30) day period in an effort to curtail his filing of grievances, the Court is satisfied that Whitney's's Complaint has set forth a claim for alleged violation of his Eighth Amendment rights sufficient to withstand scrutiny under Rule 12(b)(6).  The motion to dismiss will therefore be denied with regard to Plaintiff's allegations that Defendants intentionally subjected him to unconstitutional conditions of confinement.

**Absolute Immunity**

The next argument contends that in light of the absolute immunity afforded to public defenders, Defendant Chadwell, a former attorney for the DOC, is absolutely immune for actions taken in his role as an Assistant Counsel for the DOC.  <u>See</u> Doc. 11, p. 10.

It is equally well-settled that public defenders and court appointed counsel do not act under color of state law for purposes of § 1983 when performing a traditional lawyer's functions to a defendant in a criminal proceeding.  <u>Polk County v. Dodson</u>, 454 U.S. 312, 318 n. 7 (1981); <u>Black v. Bayer</u>, 672 F.2d 309, 320 (3d Cir.), <u>cert. denied</u>, 459 U.S. 916 (1982).  <u>Rankine v. Server</u>, 2001 WL 322517 (E.D. Pa. Feb. 13, 2001)(defense counsel does not act under color of state law); <u>Figueroa v. Clark</u>, 1992 WL 122872 (E.D. Pa. June 1, 1992)(a court appointed attorney represents only his client and not the state).

14

The claims raised against Attorney Chadwell are not based upon any actions he took while acting as a public defender or as a court appointed criminal defense counsel.  In addition, the Defendants have not provided the Court with any authority recognizing that the absolute immunity granted to public defenders and court appointed defense counsel may be extended to an attorney employed by a state agency such as the DOC.

A review of the Complaint shows that Plaintiff vaguely contends that he "believes" Chadwell helped the other named Defendants engage in retaliation.  Doc. 1, p. 26, ¶ 92.  The only other allegation against Chadwell is that he purportedly provided Defendant Rackovan with copies of filings made by the Plaintiff in another civil rights action.

Although it has not been established that Attorney Chadwell is entitled to absolute immunity, the vague, speculative contentions asserted against said Defendant are nonetheless insufficient under <u>Rode</u> to set forth a viable claim that Attorney Chadwell was personally involved in any conduct which could rise to the level of constitutional misconduct.  Dismissal will be granted in favor of Defendant Chadwell.

## **Retaliation**

According to the Complaint, Whitney was a victim of a "conspiracy of retaliation" for previously filing a lawsuit against Major Ted Robinson and for initiating institutional grievances at

SCI-Rockview.[8]  Doc. 1, p. 5.  This purported retaliation included the issuance of meritless misconducts excessive force, verbal harassment, excessive cell and pat down searches, cell and prison job transfers, improper and unconstitutional RHU placement, and destruction of personal property.

Defendants argue that the Complaint fails to set forth a viable claim of retaliation.  <u>See</u> Doc. 11, p. 11. They assert that although Plaintiff's prior lawsuit and grievances could constitute a protected first Amendment activity, the Complaint fails to establish a causal connection between the protected activity and the Defendants' actions.  <u>See</u> <u>id</u>. at p. 13.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (<u>Id</u>.)(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (<u>Id</u>.)(quoting <u>Suppon v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  <u>Rauser</u>, 241 F.3d at

---

8.  The lawsuit regarded actions which transpired at another state correctional facility.

333-34(quoting <u>Mount Health Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  <u>See Lape v. Pennsylvania</u>, 157 Fed. App'x. 491, 498 (3d Cir. 2005).  Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. <u>Krouse v. American Sterlizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a <u>prima facie</u> case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. <u>Rauser</u>, 241 F.3d at 334.

As noted in <u>Allah</u>, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was

17

subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

With respect to the first prong of <u>Rauser</u>, Defendants concede that the Complaint adequately alleges that Plaintiff was engaged in a constitutionally protected activity.  Based upon a review of the Complaint, this Court agrees that Whitney has failed to set forth facts which could adequately support a claim that he was being retaliated against for initiating a lawsuit seven (7) months[9] before he was transferred to SCI-Rockview especially in light of the assertion that he did not receive his first misconduct at SCI-Rockview on October 18, 2012.  <u>See</u> <u>id</u>. at p. 8, ¶ 12.

However, Whitney has set forth factual allegations which could arguably support a claim under <u>Rauser</u> that the SCI-Rockview Defendants intentionally subjected him to adverse actions as a consequence for pursuing a constitutionally protected activity, filing administrative grievances, while he was confined at SCI-Rockview.  Specifically, the Complaint contains multiple assertions that various Defendant prison officials made statements that the mistreatment of Whitney would cease if he ended his filing of grievances.  Defendants' request for dismissal of Whitney's retaliation claims will be denied with respect to those grievance related assertions.

---

9.  Plaintiff states his lawsuit was filed on October 27, 2011 (Doc. 1, p. 5, ¶ 1) and he was transferred to SCI-Rockview in May, 2012.

**Conspiracy**

The motion to dismiss also contain a brief, general argument that the Complaint has failed to allege a viable conspiracy claim. See Doc. 11, p. 15.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." Rose, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is

19

alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Viewing the Complaint in the light most favorable to Plaintiff, it is clear that he has arguably stated a viable conspiracy claim against Defendants.  The Complaint alleges that there was communication, meetings, cooperation, and command among the Defendants from which an agreement could arguably be inferred." There are sufficient averments of fact in the Complaint that reasonably suggest the presence of an agreement or concerted activity between the SCI-Rockview Defendants to violate Whitney's civil rights at this juncture in the proceedings.

**Amend Complaint**

Pro se parties are accorded substantial deference and liberality in federal court.  Haines v. Kerner, 404 U.S. 519 (1972); Hughes v. Rowe, 449 U.S. 5 (1980).  Although there is not a heightened pleading standard in civil rights cases, a civil rights complaint  must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff.   A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.

Although Plaintiff failed to oppose the motion to dismiss, this Court has concluded that many of his claims should proceed. However, due to the length, repetition of facts and claims, and recitation of unnecessary factual information set forth in the Complaint, the fair administration of justice requires that Whitney be directed to submit an amended complaint solely regarding his surviving claims against the Remaining Defendants.  His amended complaint should provide a brief factually specific description of each surviving alleged unconstitutional act including the date the mistreatment occurred and identifying by name which Remaining Defendants were involved.

Whitney will be directed to file an amended complaint of no more then twenty-five (25) pages in length, which states each of his surviving claims in a clear and concise manner; specifically identifies all Remaining Defendants, and states the relief he is seeking.  See Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988).

Plaintiff is advised that in order to state a viable civil rights claim he must make a showing that the conduct complained of was committed by a person acting under color of law and that said conduct deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States.  Cohen v. City of Philadelphia, 736 F.2d 81, 83, cert. denied, 469 U.S. 1019 (1984).  A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of his constitutional rights.  Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917

21

F.2d 768, 771 (3d Cir. 1990); Capone v. Marinelli, 868 F.2d 102, 106 n.7 (3d Cir. 1989).  This is the personal involvement requirement. Civil rights liability may not be imposed on the principle of respondeat superior.  Capone v. Marinelli, 868 F.2d at 106 (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)).

Whitney is also reminded that his amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the Original Complaint.  The amended complaint should only include Plaintiff's surviving claims which should be set forth in short, concise and legible statements.  It should specify which actions are alleged as to which Remaining Defendants.  Failure of the Plaintiff to timely submit an amended complaint which complies with the standards set forth herein or otherwise respond to this Order will result in dismissal of his action for failure to prosecute.  An appropriate Order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: FEBRUARY 13, 2015

22