# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | : | No. 3:14cv357 |
|---|---|---|
| **CHARLES WHITNEY,** | : | |
| Plaintiff | : | |
| v. | : | (Judge Munley) |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM OPINION

**I.     BACKGROUND**

Charles Whitney, a Pennsylvania state prisoner, filed this amended 42 U.S.C. § 1983 complaint alleging that numerous defendants violated his rights during his incarceration at two Pennsylvania prisons. (Doc. 25). In March 2018, District Judge Richard P. Conaboy granted partial summary judgment in favor of Defendants after concluding that Whitney failed to exhaust his administrative remedies as to many of the claims.[1] (Docs. 93, 94).

Judge Conaboy permitted claims to proceed related to Whitney's allegations that: (1) Sergeant Rogers and C.O. Anthony retaliated against

---

[1] Prior thereto, Judge Conaboy granted Defendants permission to bifurcate their motion for summary judgment and file one motion related to the exhaustion of administrative remedies, and a second motion addressing the merits of Whitney's claims. (Doc. 77).

Whitney by damaging his radio and footlocker during a search of Whitney's cell; (2) Anthony and C.O. Narehood retaliated against Whitney by issuing a false misconduct report asserting that Whitney disobeyed orders; (3) Rogers retaliated against Whitney by issuing a false misconduct report alleging that Whitney used profanity; and (4) Major Tod Robinson led a conspiracy to interfere with Whitney's mail. (Doc. 93; *see* Doc. 25 at 6-8, 13).

Defendants Rogers, Anthony, Robinson, and Narehood (collectively "Remaining Defendants") have now filed a motion for summary judgment asserting that Whitney's claims are without merit.[2] (Docs. 103, 104, 105, 106). First, Remaining Defendants assert that there is no proof that Rogers or Anthony damaged Whitney's property, or that any damage was intentional. (Doc. 104 at 7-9). Second, Remaining Defendants assert that the misconduct reports issued by Anthony and Rogers were non-retaliatory and, in any event, would have been issued regardless of whether Whitney had engaged in protected activity. (*Id.* at 11-14). Lastly, Remaining Defendants assert that there is no evidence that Robinson interfered with

---

[2]   Defendants also seek summary judgment in favor of C.O. Moyer. (Docs. 103, 104). However, Moyer is not listed as a defendant in the amended complaint (*see* Doc. 25), and, in his response to Remaining Defendants' motion for summary judgment, Whitney clarifies that Moyer is not a defendant in this action. (Doc. 108 at 1).

Whitney's outgoing mail, and Whitney's access to the courts claim therefore fails. (*Id.* at 10-11).

## II. DISCUSSION

"Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of law." *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant, and material if it could affect the outcome of the case." *Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 167 (2018).

### A. *Retaliation Claims*

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Adverse action is any action "taken by prison officials sufficient to deter a person of ordinary

3

firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016). If a prisoner satisfies those three elements, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

Remaining Defendants concede that, for all retaliation claims, Whitney has satisfied the first element, as he engaged in protected speech by filing grievances. (Doc. 103 at 6); *see Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (concluding that filing of prison grievance "implicates conduct protected by the First Amendment"). Thus, the only question is whether in each case Whitney suffered an adverse action that was motivated by his protected conduct, and whether prison officials would have taken the same action absent Whitney's protected conduct.

i. <u>Damage to Whitney's Property</u>

First, Whitney alleges that—in retaliation for filing grievances—Rogers and Anthony damaged Whitney's radio and tore open the bottom of his footlocker during a search of Whitney's cell. (Doc. 25 at 6; Doc 106 at 69-74; Doc. 108 at 6). Remaining Defendants contend that this claim is

4

meritless, as there is no evidence that Rogers or Anthony actually damaged Whitney's property[3] and, even if there were, there is no evidence that the damage was done in retaliation for Whitney having filed grievances. (Doc. 104 at 7-9).

It is undisputed that Rogers and Anthony searched Whitney's cell—outside of Whitney's presence—on January 9, 2013. (Doc. 106 at 30, 39). However, Moving Defendants have presented declarations from both Rogers and Anthony denying that either defendant damaged Whitney's property during that search. (*Id.* at 30-31, 39).

Whitney presents no evidence to rebut the declarations of Rogers and Anthony. Rather, Whitney relies on the bald assertion[4] that Rogers and Anthony damaged his property as part of a broad conspiracy.[5] (Doc. 108 at 5-6). This speculative assertion is insufficient to avoid summary judgment. *See McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 436-37 (3d Cir. 2007)

---

[3] Remaining Defendants concede that "the confiscation of or damage to inmate property is admittedly the type of conduct which can deter a reasonably firm inmate." (Doc. 104 at 7).

[4] Notably, Whitney points to no witnesses of the search other than Rogers and Anthony and admits that he was not present during the search. (Doc. 25 at 6). As the Facility Manager aptly noted in addressing Whitney's grievance regarding this incident, "[t]here is no evidence to substantiate when or how, or even if, [Whitney's] items [we]re damaged." (Doc. 106 at 71).

[5] Whitney finds it significant that a grievance officer described the search of Whitney's cell as a "Fire & Safety check" while Rogers and Anthony describe the search as a security inspection. (Doc. 108 at 4, 6). This inconsistency—whether intentional or unintentional—does nothing to demonstrate that Rogers or Anthony damaged Whitney's property or that such damage was intentional.

(noting that "to survive summary judgment, a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (brackets and internal quotation marks omitted)); *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case").

Moreover, even if the Court assumes that Rogers and Anthony damaged Whitney's property during the cell search, there is no evidence that the damage was intentional or done in retaliation for Whitney filing grievances. Absent such evidence, Whitney must rely solely on temporal proximity to establish causation. The record demonstrates that, prior to the cell search, Whitney's most recent grievance was filed on December 13, 2012. (Doc. 104 at 63; 108 at 5). There was therefore an approximately one-month gap between the filing of Whitney's grievance and the search of Whitney's cell. The United States Court of Appeals for the Third Circuit has recognized that "a one-month gap can be too long, standing alone, to establish a prima facie showing of causation." *Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016). Consequently, Whitney has established

neither adverse action nor causation, and his claim fails.

> ii. <u>Misconduct Report for Refusal to Obey Order</u>

Second, Whitney alleges that Anthony falsely accused Whitney of failing to obey an order—and Narehood acted as a false witness—again in retaliation for Whitney filing grievances regarding his cold cell. (Doc. 25 at 6-7; Doc. 106 at 24-25). Remaining Defendants assert that there is no evidence of retaliatory motive and, even if there were, Anthony and Narehood would have taken the same action regardless of Whitney's protected activities. (Doc. 104 at 11-12).

Both Anthony and Narehood have provided declarations stating that, on February 26, 2013, Whitney disobeyed multiple orders from Anthony. (Doc. 106 at 40, 49). Anthony attests that this alone is why she issued Whitney a misconduct report, and that the misconduct report was not issued for any retaliatory purpose. (*Id.* at 40). Whitney again presents no evidence of retaliatory animus to contradict those declarations.

Whitney does state in his deposition testimony that C.O.1 Osborne threatened to issue a false misconduct report if Whitney filed a grievance related to his cold cell. (Doc. 108 at 25-26). However, Whitney in no way connects Osborne's threat with Anthony's decision to file a misconduct

report, other than to vaguely allege the existence of a conspiracy among the prison's correctional officers. (*Id.*; Doc. 25 at 6-7). Absent any evidence suggesting that Anthony issued the misconduct report in retaliation for filing a grievance, Whitney must rely solely on temporal proximity to establish causation. Anthony filed the misconduct report on February 26, 2013, (Doc. 106 at 41), and the most recent grievance filed by Whitney prior to that date was a January 23, 2013, grievance related to the temperature in Whitney's cell. (*Id.* at 62). This gap of more than one month cannot alone support a finding of causation. *Tirk*, 673 F. App'x at 241.

Additionally, there is no genuine dispute that Anthony would have filed the misconduct report absent Whitney's protected activities. Both Anthony and Narehood attest that Whitney refused Anthony's orders. (Doc. 106 at 40, 49). Although Whitney claims that the accusation is false (Doc. 108 at 24-25), a disciplinary hearing was held and, based on Anthony's statement, Whitney was found guilty of the misconduct. (Doc. 106 at 42). The statements of Anthony and Narehood constitute "some evidence" to support the finding of guilt. The Third Circuit has held in similar circumstances that a "retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty finding for the misconduct charge brought against [a plaintiff] after he filed his grievance." *Jones v. Davidson*, 666 F. App'x 143, 148 (3d Cir.

2016). Remaining Defendants are therefore entitled to summary judgment on this claim.

    iii.    <u>Misconduct Report for Abusive and Obscene Language</u>

Third, Whitney alleges that Rogers' misconduct report—in which he asserted that Whitney used profanity—was false and issued in retaliation for Whitney reporting cold cell conditions and filing grievances against Rogers. (Doc. 25 at 8, 10; Doc. 106 at 31, 36). Remaining Defendants again assert that there is no evidence of retaliatory motive and, even if there were, Rogers would have taken the same action regardless of Whitney's protected activities. (Doc. 104 at 13-14).

Rogers and Moyer both attest in their declarations that, on February 27, 2013, Whitney shouted profanities at Rogers. (Doc. 106 at 31, 53). Rogers states that this formed the basis for the issuance of a misconduct report and that the misconduct report was not issued for any retaliatory purpose. (*Id.* at 31). Whitney presents no evidence of retaliatory animus to contradict those declarations. Moreover, there was a one-month gap between Whitney's filing of a grievance and the issuance of the misconduct report (Doc. 106 at 36, 62), undermining any assertion that temporal proximity alone may support a finding of causation. *Tirk*, 673 F. App'x at

241. Finally, Whitney's claim also fails because, in a decision supported by "some evidence," Whitney was found guilty of the misconduct charge. (Doc. 106 at 27); *see Jones*, 666 F. App'x at 148.

B. *Access to the Courts Claim*

Lastly, Whitney contends that Robinson interfered with Whitney's access to the courts by tampering with and destroying Whitney's legal mail. (Doc. 25 at 13; Doc. 82 at 30-43). Remaining Defendants argue that this claim fails because there is no evidence that Robinson interfered with Whitney's mail and because a § 1983 claim cannot be brought to vindicate a prisoner's property rights.[6] (Doc. 104 at 10-11).

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). To establish a claim for denial of access to the courts, a plaintiff must allege that his access to the courts was impaired, and that he suffered actual injury because of Defendants' actions. *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006). Moreover, it is not sufficient to show only that defendants impaired the plaintiff's access to the courts; rather, a plaintiff must demonstrate that

---

[6] Although this last argument is well taken, Whitney's complaint and his response to Remaining Defendants' motion for summary judgment make clear that his claim rests solely upon a denial of access to the courts. (*See* Docs. 25, 108).

defendants' actions were taken "*wrongfully and intentionally . . . for the purpose of frustrating*" plaintiff's access to the courts. *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 445 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police,* 603 F.3d 181 (3d Cir. 2010).

Robinson has provided a declaration in which he asserts that: (1) he did not work in the mailroom; (2) he did not handle inmate mail; and (3) he never destroyed or interfered with Whitney's mail, nor is he aware of any other prison employee so doing. (Doc. 106 at 44-45). Whitney in turn proffers no evidence to support his allegation that Robinson interfered with his mail but instead relies solely on his own vague speculation. (Doc. 108 at 2, 6). Indeed, Whitney's opposition to Remaining Defendants' motion for summary judgment reveals the speculative nature of his claim when he asserts that Robinson "could have order[ed] someone to destroy [Whitney's] mail instead of sending it to the courts." (Doc. 108 at 53). Absent any evidence indicating that Robinson took steps to intentionally frustrate Whitney's access to the courts, this claim fails.

## III. Conclusion

For the foregoing reasons, Remaining Defendants' motion for summary judgment will be granted.[7] An appropriate Order follows.

**BY THE COURT:**

Date: 7/10/19                      **s/James M. Munley**
                                         **JUDGE JAMES M. MUNLEY**
                                         **United States District Court**

---

[7] To the extent that Whitney requests reconsideration of the Court's previous order granting partial summary judgment in favor of Defendants (Doc. 108 at 1), not only is such a request improperly presented in a response brief, but the Court finds no reason to reconsider that order. *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (setting forth grounds for granting reconsideration).